IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY CORBIN, | : | CIVIL ACTION NO. **3:CV-13-0856** |
| Plaintiff | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| TABB BICKELL, et. al, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I.    BACKGROUND.**

On April 5, 2013, Plaintiff Anthony Corbin, an inmate at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), Huntingdon, PA, filed, *pro se*, a civil rights action with this Court pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff attached Exhibits (1-A to 16-A) to his 3-page typed form Complaint with 3 pages of typed attachments. Plaintiff's Exhibits consist of his Inmate Requests to Staff, Grievances and appeals as well as the responses from prison staff. Plaintiff also filed a Motion for Leave to Proceed *In Forma Pauperis*. (Doc. 2).

**II.    ALLEGATIONS OF COMPLAINT.**

Plaintiff's claim is basically an Eighth Amendment conditions of confinement claim alleging that since his arrival at SCI-Huntingdon, on or about October 12, 2010, he has been constantly exposed to Environmental Tobacco Smoke ("ETS") and, that he sought relief from prison staff requesting not to be housed in smoking Units and in cells with inmates who

1

smoke, but to no avail. As stated, Plaintiff attached numerous Exhibits to his Complaint, chronicling his requests to prevent further exposure to ETS through the prison grievance process. Plaintiff names ten (10) Defendants in his Complaint: Tabb Bickell, Superintendent at SCI-Huntingdon; Mary Lou Showalter, Health Care Administrator at SCI-Huntingdon; T. Hicks-Kern, Employment Office at SCI-Huntingdon; Scott Walters, Major of Unit Management at SCI-Huntingdon; Meg Yost, Counselor at SCI-Huntingdon; Kurt Granlund, Unit Manager at SCI-Huntingdon; Connie Green, Grievance Coordinator at SCI-Huntingdon; Dorina Varner, Department of Corrections Chief Grievance Officer; SCI-Huntingdon; and the Pennsylvania Department of Corrections ("DOC"). (Doc. 1, p. 2).

Specifically, Plaintiff states that he has been confined at SCI-Huntingdon for more than 2 years in the Special Needs Unit ("SNU") for "moderate mental reasons." He states that he has repeatedly and diligently sought relief from the exposure to environmental tobacco smoke, ETS. Plaintiff further states that since his arrival at SCI-Huntingdon on October 12, 2010, he has been exposed to unreasonably high levels of ETS, and is still subjected to the exposure to date. (Doc. 1, p. 2). Plaintiff states that he has unspecified conditions and that the ETS makes his symptoms worse.

Plaintiff states that after he was exposed to ETS for 13 months and after many of his verbal complaints were ignored, he started a log of his written complaints to prison staff to try and obtain an informal resolution seeking a change in his cell to be housed with a non-smoking inmate. Plaintiff states that he received a cell change in November 2011, but that the smoking of inmates inside the prison continued. Plaintiff avers that soon after his cell

2

change, he was again housed with another chronic smoker inmate. Plaintiff alleges that he sent an Inmate Request to Defendant Bickell on February 17, 2012, and Bickell assured Plaintiff that the smoking policy in the prison would be enforced to the best of their ability.1 Plaintiff avers that after 7 more months of being exposed to ETS, on September 5, 2012, he sent an Inmate Request to his Unit Counselor seeking a windowed cell. However, Plaintiff states that he was placed in A-A Unit in general population with a chain smoker inmate where he was exposed to triple the amount of ETS. On October 17, 2012, Plaintiff avers that he sent a Request to Defendant Yost for a cell change, namely, a single cell or a non-smoking cell mate or a cell in E-A Unit with a window. Plaintiff states that his Request was not granted.

Plaintiff sent a Request to the Placement Office and Defendant Hicks-Kern advised him that he would not be moved for a while and to contact Defendant Walters, Unit Major. Plaintiff sent a Request to Defendant Walters and Walters told Plaintiff he was on the list to move. Also, Walters told Plaintiff he would ask Defendant Granlund to look into the smoking in A-Unit.

Plaintiff complained to the prison Medical Department in December 2012, after he felt effects from ETS, and he was told that Defendant Showalter stated there was nothing that could be done for him, and that She would not authorize a medical transfer for him. Plaintiff then contacted Defendant Bickell again *via* a Request and informed Bickell that his symptoms had worsened due to ETS, and he requested immediate action to prevent further

---

1Plaintiff cites to his Exhibits attached to his Complaint in reference to his Requests and Grievances.

ETS damage to him. Defendant Granlund responded to Plaintiff's Request and told Plaintiff he would not be moved to E-Unit and to find a compatible cell mate.

Plaintiff states that after he exhausted all of the available informal resolutions to try and avoid ETS, he filed a formal grievance on December 14, 2012. Plaintiff states that the prison grievance coordinator rejected his grievance as untimely on December 17, 2012, and told him to correct the date. Plaintiff sent another Informal Request to Defendant Bickell on December 20, 2012, to try and remedy his complaint, and Bickell told Plaintiff that if he was found eligible for E-Unit housing, he would be moved. Plaintiff then re-submitted his grievance on December 24, 2012, with timely dates, and Defendant Grievance Coordinator Green rejected it as untimely. Plaintiff appealed to Defendant Bickell, and Bickell upheld the rejection. Plaintiff filed his final appeal, and Defendant Varner dismissed it on February 12, 2013, as untimely.

Thus, Plaintiff states that after he fully exhausted his DOC administrative remedies, he filed the instant §1983 action. Plaintiff states that he is still exposed to ETS and suffering from unspecified symptoms. Plaintiff states that each of his Defendants had the duty to assist him and alleviate his exposure to ETS but failed to act. (Doc. 1, pp. 1-5).

As relief, Plaintiff requests the Court to order Defendants to immediately transfer him to a completely non-smoking Therapeutic Community facility under DOC control, or to order Defendants to place him in the Interstate Compact and transfer him to a completely non-smoking federal facility. Alternatively, Plaintiff requests the Court to transfer him to be housed in E-A Unit at SCI-Huntingdon with non-smoking inmates.

We note that Plaintiff has no constitutional right to confinement in any particular prison, facility or rehabilitative program. See *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Further, Plaintiff has no constitutional right to any particular classification or custody level in prison. See *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997). Recently, in *Njos v. BOP*, Civil No. 12-1251, M.D. Pa., January 8, 2013 Memorandum and Order (J. Kosik), the Court dismissed with prejudice Plaintiff inmate's request in a *Bivens* action seeking the Court to order the BOP to transfer him to a federal medical facility.

Plaintiff also requests compensatory and punitive damages each in the amount of $250,000. (*Id.*, p. 6).

This Court has jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. § 1331 and 1343(a)(3). We will now screen Plaintiff's Complaint in accordance with § 1915 of the PLRA.

### III. STANDARDS OF REVIEW.

#### A. PLRA

The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of

---

[2] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

>  poverty is untrue; or (B) the action or appeal
>  (i) is frivolous or malicious; (ii) fails to state a
>  claim on which relief may be granted; or (iii)
>  seeks monetary relief against a defendant who
>  is immune from such relief.

In screening a Complaint under the PLRA, the Court uses the same standard that it uses to determine a Rule 12(b)(6) Motion to Dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d 579, 588 (W.D. Pa. 2008).

### B. MOTION TO DISMISS

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC*

6

*Shadyside*, 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny]*, 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( quoting *Twombly,* 550 U.S. at 555) (not precedential).

### C. Section 1983 Standard

In a 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under

7

color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. *See Rode*, 845 F.2d at 1208.

## IV.     DISCUSSION.

Initially, Plaintiff's requests for specific amounts of monetary damages (Doc. 1, p. 6) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

To the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory and punitive damages) against Defendants in their official capacities, we will recommend that this request for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009). We find futility in allowing Plaintiff to amend his Complaint to seek damages against the state actor Defendants in their official capacities and the state agency Defendants.

We find that Defendants DOC and SCI-Huntingdon should be dismissed with prejudice from this §1983 action. Plaintiff alleges that his constitutional rights were violated

since the employees of the DOC and SCI-Huntingdon exposed him to an unreasonably high level of second-hand tobacco smoke for over 24 months and failed to remedy his repeated requests for relief to alleviate or minimize his ETS exposure. In his present §1983 action, Plaintiff alleges that SCI-Huntingdon and DOC Defendants would not give him relief from exposure to second-tobacco smoke. Plaintiff alleges that he notified the individual Defendants on numerous occasions regarding his exposure to the smoke, starting with several informal Requests and then he filed a formal grievance which was fully exhausted. Plaintiff's Exhibits support his contentions regarding his Requests and his grievance.3

We find that Defendants DOC and SCI-Huntingdon as well as the eight individual Defendants in their official capacities are entitled to Eleventh Amendment immunity. *Keisling v. Renn*, 425 Fed.Appx. 106, 109 (3d Cir. 2011). Plaintiff does not contend that Pennsylvania has waived its immunity or consented to his action. Further, Pennsylvania has not waived its Eleventh Amendment immunity to such an action. *Keisling v. Renn*, 425 Fed.Appx. at 109. Thus, we will recommend that Plaintiff's claims against Defendants DOC, SCI-Huntingdon and the eight individual Defendants in their official capacities be dismissed with prejudice since any amendment with respect to these claims against these Defendants

---

[3]It is well-settled that the Plaintiff must exhaust all of his available DOC administrative remedies with respect to each one of his claims prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including §1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*. However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

is futile. *See Keisling v. Renn*, 425 Fed.Appx. at 109; *Will v. Michigan Dept. of State Police*, 491 U.S. 70-71 (state agencies and officials acting in their official capacities are not "persons" for purposes of §1983).

Additionally, we find that Plaintiff's action as against Defendants DOC and SCI-Huntingdon is barred under the Eleventh Amendment. *See Keisling v. Renn*, 425 Fed.Appx. at 109. In *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009), the Court held that:

> The Eleventh Amendment precludes private federal litigation against a state and its agencies. n16 *Hans v. Louisiana*, 134 U.S. 1, 15-16, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194-95 (3d Cir. 2008). This is a jurisdictional bar subject to only two exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment, or (2) a state may waive its sovereign immunity by consenting to suit. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). It is well settled that Congress had no intention to abrogate the states' sovereign immunity by enacting § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. See 42 PA. CONS. STAT. § 8521(b); *see also Lombardo*, 540 F.3d at 196 n.3; *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).

*See also Urella v. PA State Troopers Ass'n*, 2008 WL 1944069, *3 (E.D. Pa.).

Thus, we find that Plaintiff's action as against Defendants DOC and SCI-Huntingdon is barred by the Eleventh Amendment. *See Democracy Rising PA v. Celluci, supra.* The

11

Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless it finds bad faith, undue delay, prejudice, or futility. See *Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint as against Defendants DOC and SCI-Huntingdon because these Defendants are immune from his constitutional claims by the Eleventh Amendment. Thus, we will recommend that Defendants DOC and SCI-Huntingdon be dismissed from this case with prejudice since we find it would be futile to permit Plaintiff to file an amendment as to these two Defendants.

We also find that Plaintiff only names Varner, Showalter, Yost, Walters, Hicks-Kern, Granlund, and Green as Defendants with respect to their responses to his Inmate Requests, grievance and appeals. Plaintiff's numerous Exhibits attached to his Complaint show that the stated seven (7) Defendants were only involved with this case regarding their responses to Plaintiffs' Requests, grievance and appeals. To the extent that Plaintiff has named Defendants Varner, Showalter, Yost, Walters, Hicks-Kern, Granlund, and Green as parties to his action based on their responses to Plaintiff's Requests, grievance and appeals, we will recommend that these seven Defendants be dismissed with prejudice from this action. It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th

Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005); *see also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser, supra* (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra. See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.) (claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures.")(citations omitted).

Therefore, because Plaintiff has named Varner, Showalter, Yost, Walters, Hicks-Kern, Granlund, and Green as Defendants only due to their responses to his Requests, grievance and appeals, we will recommend that these seven Defendants be dismissed with prejudice from this action. In light of the very detailed Complaint Plaintiff filed as well as his Exhibits, we find futility in allowing Plaintiff to amend his Complaint against Defendants Varner, Showalter, Yost, Walters, Hicks-Kern, Granlund, and Green. *See Grayson, supra.*

We find, for present screening purposes, that Plaintiff has sufficiently stated an Eighth Amendment claim as against Defendant Superintendent Bickell. We find Plaintiff has sufficiently alleged that the ETS he was exposed to at SCI-Huntingdon for over two years put him at a dangerous risk that amounted to cruel and unusual punishment under the Eighth Amendment. Further, we find that Plaintiff has only sufficiently alleged that Defendant Bickell's personal conduct was the cause of any injury, as required in § 1983 action.

In *Belland v. Matachiski*, 2009 WL 1585811, *4 (M.D. Pa.), the Court stated:

> Under prevailing Third Circuit precedent, a prisoner may maintain an action under the Eighth Amendment based on his exposure to environmental tobacco smoke in one of two ways. *Atkinson v. Taylor*, 316 F.3d 257, 262 (3d Cir.2003). First, the plaintiff can prove that prison officers, "with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his *future health.*" *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (emphasis added). Second, the plaintiff can prove that the officers demonstrated "deliberate indifference to [his] serious medical needs," thereby causing *contemporaneous injury. Atkinson*, 316 F.3d at 266 (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

We find that Plaintiff has only sufficiently stated that Defendant Bickell caused him to be exposed to excessive environmental tobacco smoke and that the environmental tobacco smoke posed an unreasonable risk of serious damage to Plaintiff's future health or caused Plaintiff a contemporaneous injury. As discussed, we do not find that the other seven individual Defendants were sufficiently personally involved with Plaintiff's claim and, we do not find that the other seven Defendants had the requisite authority and culpable state of mind with respect to Plaintiff's cell assignment.

The courts have ruled that some exposure of inmates to ETS in prison does not substantiate a viable Eighth Amendment claim. The Court uses the standard stated in *Helling* and *Atkinson* to determine if an Eighth Amendment violation occurred regarding excessive exposure to tobacco smoke by an inmate. The Plaintiff inmate must prove: "(1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS." *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475 (1993).

In regard to the first prong of the test, Plaintiff alleges in his Complaints that there was more of a concentration of smoking by inmates and prison staff in his assigned cell block and A-Unit, and that second-hand smoke was harmful to him and worsened his symptoms. Plaintiff also alleges that the effects of second-hand smoke exposure caused him to suffer and placed him at risk due to the excessive amount of ETS he endured. Plaintiff further alleges that Defendant Bickell was aware of his condition and the heavy amount of smoking he was exposed to in his cell block and from his cell mates.

The Third Circuit has opined that exposure of an inmate to ETS in poorly ventilated restrooms for a period of twenty (20) months was not in violation of the inmates rights as it did not meet the excessive exposure test. *Griffin v. DeRosa*, 153 Fed.Appx. 851 (3d Cir. 2005). Plaintiff Corbin alleges that he has housed in a cell in the smoking area and with chain smoking cell mates for over thirty (30) months, *i.e.*, since October 12, 2010. Examples provided by the Third Circuit to show what would constitute excessive exposure were bunking with a cell mate who smoked five packs a day or sharing a cell with multiple, habitual smokers. *See Helling*, 509 U.S. at 35; *Atkinson v. Taylor*, 316 F.3d 257, 259 (3d Cir. 2003). As stated, we find that Plaintiff has sufficiently stated an Eighth Amendment claim only against Defendant Bickell. Plaintiff has averred that he was exposed to an excessive amount of smoke while celled in a smoking area at SCI-Huntingdon with smoking cell mates in A-Unit. Plaintiff has also alleged that his health may be detrimentally affected by the excessive exposure to second-hand smoke as required by the *Helling* test. We do not find that Plaintiff also stated the required personal involvement of the other seven individual Defendants with respect to his Eighth Amendment claim. As stated above, a § 1983 action requires that the Plaintiff show he was denied rights, privileges or immunities secured by the law or the Constitution of the United States by the Defendants. Plaintiff must sufficiently show that each Defendant was personally involved with his constitutional claims. *See Sutton*, 323 F. 3d at 249-50. As such, we will recommend that Plaintiff's Eighth Amendment claim be allowed to proceed only as against Defendant Bickell.

## IV. RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff's requests for specific monetary damages should be stricken from his Complaint. It is recommended that to the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory and punitive damages) against Defendants in their official capacities, this request for relief be dismissed with prejudice. It is also recommended that Defendants DOC and SCI-Huntingdon be dismissed from this case with prejudice. Further, it is recommended that Defendants Varner, Showalter, Yost, Walters, Hicks-Kern, Granlund, and Green be dismissed with prejudice from this action.

It is recommended that Plaintiff's Eighth Amendment claim be allowed to proceed only as against Defendant Bickell.

Finally, it is recommended that this case be remanded to the undersigned for further proceedings as against Defendant Bickell.

**THOMAS M. BLEWITT**
United States Magistrate Judge

Dated: April 19, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ANTHONY CORBIN, | : | CIVIL ACTION NO. 3:CV-13-0856 |
|---|---|---|
| Plaintiff | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| TABB BICKELL, et. al, | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **April 19, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objection to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

THOMAS M. BLEWITT
United States Magistrate Judge

Dated: April 19, 2013