UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED SCRANTON JUL 21 2014 PER ___ DEPUTY CLERK

ANTHONY CORBIN,

   Plaintiff,

v.

TABB BICKELL, *et al*,

   Defendants.

Civil Action No. 3:13-CV-0856

(Judge Kosik)

## MEMORANDUM

Before the Court are Plaintiff's objections to a Report and Recommendation ("R&R") issued by United States Magistrate Judge Thomas M. Blewitt. For the reasons which follow, we will adopt the Magistrate Judge's recommendation that Defendants' summary judgment motion be granted, but we will decline to fully adopt the Magistrate Judge's reasons.

### I. BACKGROUND

Plaintiff, now an inmate at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), Huntingdon, PA, filed, *pro se*, a civil rights action pursuant to 42 U.S.C. § 1983, on April 5, 2013 (Doc. 1). Magistrate Judge Blewitt screened the Complaint and issued an R&R (Doc. 6) on April 19, 2013. We adopted the R&R, in part, by Order dated May 19, 2013 (Doc. 9). The case was remanded to the Magistrate Judge for further proceedings. On May 31, 2013, Plaintiff filed an Amended Complaint (Doc. 12). On July 9, 2013, we adopted the Magistrate Judge's June 14, 2013, R&R (Doc. 14), thereby dismissing certain Defendants with prejudice from the action, and only allowing Plaintiff's Eighth Amendment claim to proceed as to Defendants Granlund and Bickell. (Doc. 16.) The case was remanded to the Magistrate Judge

for further proceedings. (Id.)

Magistrate Judge Blewitt granted Plaintiff's motion to proceed *in forma pauperis* (Doc. 17) on July 10, 2013, and Defendants filed a Waiver of Service (Doc. 23) on August 27, 2013. Defendants filed a Motion for Summary Judgment (Doc. 31), supporting brief (Doc. 32), Statement of Material Facts ("SMF") (Doc. 33), and an appendix of exhibits (Doc. 34), on December 10, 2013. Plaintiff filed Opposing SMF (Doc. 36) on December 26, 2013, and a brief in opposition (Doc. 39) on January 17, 2014.

The motion for summary judgment was fully briefed and ripe for disposition. Magistrate Judge Blewitt issued an R&R (Doc. 40) on February 28, 2014, recommending that the Court grant Defendants' Motion for Summary Judgment. After an extension of time was granted, Plaintiff filed Objections to the R&R (Doc. 43) on March 18, 2014. Defendants Bickell and Granlund filed a brief in opposition to Plaintiff's objections (Doc. 44) on April 1, 2014. Plaintiff filed a reply brief (Doc. 46) and a motion to appoint counsel (Doc. 45) on April 18, 2014.

## II. STATEMENT OF FACTS

Plaintiff's Eighth Amendment Environmental Tobacco Smoke ("ETS") claims are based on allegations that since his arrival at SCI-Huntingdon, on or about October 12, 2010, he has constantly been exposed to ETS. Plaintiff claims Defendant Bickell, the Superintendent at SCI-Huntingdon, and Defendant Granlund, a Unit Manager, were deliberately indifferent to his exposure to ETS and his serious medical needs related to ETS exposure. (Doc. 33, Defs' SMF, at ¶¶ 3-4.)

The Department of Corrections ("DOC") has a policy, in effect at SCI-Huntingdon, that prohibits smoking in all Department facilities. (Id. at ¶ 10.) Defendants admit that although the

policy is enforced to the best of the staffs' ability, 100% compliance is impossible to achieve. (Id. at ¶¶ 33-34.)

Upon arrival at SCI-Huntingdon, Plaintiff was housed in C Block Section A. (Id. at ¶ 13.) He was then moved to the Special Needs Unit ("SNU"), C Block Section B. (Id. at ¶ 14.) While in the SNU, on November 17, 2011, Plaintiff filed, what was submitted to the Court, his first Form DC-135A regarding exposure to ETS with concern of a future injury. (Doc. 1, Pl.'s First Compl., Ex. 1-A.) Plaintiff's cell was changed that same day. (Id.)

On February 17, 2012, Plaintiff filed a Form DC-135A to Defendant Bickell, requesting relief from exposure to ETS and complaining that the smoking policy was not being enforced. (Id. at Ex. 2-A; Doc. 33, Defs' SMF, at ¶ 22.) Defendant Bickell personally responded that the smoking policy is being enforced to the best of the prison's ability. (Doc. 1, Pl.'s First Compl., Ex. 2-A.) The parties do not dispute that Defendant Bickell makes rounds throughout the institution and does not observe inmates or staff smoking inside of the buildings. (Doc. 36, Pl.'s Opposing SMF, at ¶ 25.)

Plaintiff also spent time in the Restricted Housing Unit ("RHU"), G Block. (Doc. 33, Defs' SMF, at ¶ 15.) While in the SNU and RHU, Plaintiff lived in approximately fifteen different cells. (Id. at ¶ 16.)

On September 5, 2012, Plaintiff sent a Form DC-135A to his counselor, requesting to be moved to E Block to get relief from exposure to cigarette smoke. (Id. at Ex. 3-A.) The counselor responded by stating that he would circulate a votesheet for placement in general population. (Id.) On September 28, 2012, Plaintiff was placed in general population on A Block. (Doc. 33, Defs' SMF, at ¶ 17.) Since his arrival on A Block, Plaintiff had his cell changed four times. (Id.

at ¶ 18.)

Defendant Granlund has been Plaintiff's Unit Manager on A Block since October 3, 2012. (Id. at ¶ 19.) Plaintiff never sent a Form DC-135A to Defendant Granlund expressing concern of exposure to ETS, but forms sent to other staff indicate that Defendant Granlund would be informed of Plaintiff's concerns. (Id. at ¶ 20; Doc. 36, Pl.'s Opp. SMF, at ¶ 20; Doc. 1, Pl's First Compl., Ex. 6-A.)

While housed on A Block, Plaintiff sent a Form DC-135A to his counselor on October 17, 2012, requesting the status on his move to E Block, since he was housed with a smoker and feeling "adverse effects."[1] (Doc. 1, Pl.'s First Compl., Ex. 4-A.) The counselor told Plaintiff that he would be on a waiting list to be moved to E Block, and directed Plaintiff to contact the Placement Office. (Id.) Plaintiff sent a Form DC-135A to the Placement Office on October 23, 2012, asking when he would be moved to E Block. (Id. at Ex. 5-A.) The Placement Office told Plaintiff he would likely not be moved for awhile, because of where he was on the waiting list, and directed him to discuss the issue with his Unit Manager. (Id.) On October 26, 2012, Plaintiff sent a Form DC-135A to his Unit Manager. (Id. at Ex. 6-A). The Unit Manager told Plaintiff that he was on the list to be moved, and that he would discuss the smoking in A Unit with Granlund. (Id.)

On December 12, 2012, five days after a cell change, Plaintiff sent a Form DC-135A to the Medical Department. (Id. at Ex. 7-A.) Plaintiff complained of the constant exposure to ETS and stated that he was experiencing chronic headaches, chest pains, stomach cramps, shortness of breath, sore throat, burning sensation of the sinuses, light nose bleeding, delusions, hypertension,

---

[1] This was the first time Plaintiff claimed a present injury related to exposure to ETS.

depression, anger, and crazy "idealizations." (Id.) Plaintiff was seen at sick call on December 14, 2012, for his complaints. (Doc. 33, Defs' SMF, at ¶ 44.) This was the only sick call related to ETS exposure. (Id.) Plaintiff did not receive any diagnosis or treatment and was told to return immediately if he experiences the symptoms in the future. (Doc. 34, Defs' App., Ex. I, Dec. 14, 2012 Notes.) No other medical evidence related to ETS exposure was submitted.

Also on December 12, 2012, Plaintiff sent a Form DC-135A to Defendant Bickell, complaining that he was housed with a smoker and being exposed to ETS. (Id. at Ex. 8-A.) Defendant Bickell replied that Plaintiff needs to find a compatible cellmate. (Id.)

On December 14, 2012, Plaintiff filed Grievance 440442, complaining of his constant exposure to ETS and the staffs' deliberate indifference to his complaints. (Id. at Ex. 9-A.) Plaintiff's grievance was initially denied because he did not mention a date in the grievance to determine its timeliness. (Id.) Plaintiff was given an opportunity to amend and resubmit. (Id.) Plaintiff resubmitted the grievance, basing his claim on the continuous exposure to ETS from October 14, 2010 through December 12, 2012. (Doc. 33, Defs' SMF, at ¶ 65.) The grievance was again rejected as untimely since it was not submitted within fifteen working days of the events upon which the claims were based, as required by DC-ADM 804. (Id.) Plaintiff properly appealed the denial of his grievance to the Facility Manager, who upheld the rejection and stated that "DC ADM 804 states grievances must be based on an event, not an alleged pattern of violations."[2] (Doc. 34, Defs' App. to SMF, Ex. B, Grievance Records, Jan. 11, 2013 Decision.)

---

[2] Defendants do not argue in their motion for summary judgment that Plaintiff was not allowed to grieve a pattern of events, nor do we find this explicitly stated in DC-ADM 804. We interpret Defendants' arguments as that a prisoner cannot grieve a pattern of events that occur outside of the fifteen day period to file a grievance. We also find that DC-ADM 804 allows inmates to grieve "events," as evidenced by instructions to inmates that they must describe "event(s) that gave rise to the grievance."

The Facility Manager found that the grievance was properly denied since Plaintiff waited two years to submit a grievance. (Id.) Plaintiff then properly appealed to the Chief Grievance Officer, who found that Plaintiff's grievance was properly rejected as untimely. (Id., Feb. 12, 2013 Decision.)

### III. STANDARD OF REVIEW

**A. Motion for Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Id. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial burden can be met simply by "pointing out to the district court that

---

DC-ADM 804, § 1, Part A, para. 11.

there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). It then follows that summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. Section 1983 Standard**

In a Section 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. Parrat v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). In order for Section 1983 liability to be appropriate, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). The plaintiff must allege personal involvement, which "can be shown through allegations of personal direction or of actual knowledge or acquiescence," and must be pled with particularity. Id.

**IV. DISCUSSION**

When objections are filed to an R&R of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we

may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

First, we address Defendants' argument that Plaintiff's objections to the R&R should be overruled for failure to follow the rules of procedure, since Plaintiff did not file an accompanying brief pursuant to Local Rule 72.2 of the Middle District of Pennsylvania, nor cite to legal authority. Plaintiff submitted a reply brief in response to Defendants' brief in opposition, arguing that he objected to the R&R in the same manner he objected to the previous R&R (Doc. 6), and this Court considered those objections. We find that Plaintiff has made a good faith effort to specifically object and give reasons for his objections in his Objection to Report and Recommendation, even though he did not file a separate brief. In the interest of justice, we will consider Plaintiff's objections.

Plaintiff objects to the Magistrate Judge's finding that Plaintiff did not fully comport with Local Rule 56.1 because he improperly denied some of Defendants' SMF. Plaintiff also objects to the Magistrate Judge's findings that Plaintiff had ample opportunity to conduct discovery, and that Plaintiff failed to exhaust his administrative remedies. Additionally, Plaintiff requests the opportunity to conduct and submit additional discovery. We discuss each of Plaintiff's objections and requests in turn.

## A. OBJECTION TO TREATMENT OF STATEMENT OF MATERIAL FACTS

The Magistrate Judge found that Plaintiff did not properly deny some of Defendants'

SMF because they were not supported by evidence, as required by Local Rule 56.1, and thus deemed them admitted. Plaintiff objects to the Magistrate Judge's treatment of the parties' SMF because he asserts that he cited to the evidence supporting his denials of Defendants' SMF at the end of his responses, in paragraph 66. Plaintiff's catch-all citation to evidence in the last paragraph stated, "[S]ee exhibits 1-A thru 16-A also Appendix at (1) for each one of plaintiff's numbered opposed facts." (Doc. 36, Pl.'s Opposing SMF, at ¶ 66.) To some of his denials, Plaintiff properly cited to evidence, such as Defendants' exhibits and Plaintiff's own declaration.

We find that the Magistrate Judge treated the parties' SMF properly. The Magistrate Judge took into account that Plaintiff is a *pro se* litigant and construed Plaintiff's opposing SMF liberally. The Magistrate Judge looked beyond the improperly denied statement of facts, and looked for support of those denials in Plaintiff's declaration, even though Plaintiff failed to cite to his declaration or other evidence. It is not the court's role to sift through the evidence to find what supports the Plaintiff's denial of Defendant's SMF. Additionally, we note that Plaintiff did, at times, properly cite to evidence to support his denials, so it appears he grasped the requirement of Local Rule 56.1. Therefore, even construing Plaintiff's opposing SMF liberally, we agree with the Magistrate Judge and do not find Plaintiff's citation to "exhibits 1-A thru 16-A . . . for each one of plaintiff's numbered opposed facts," in the last paragraph, sufficient.

B. **PLAINTIFF'S REQUEST TO COMPLETE AND SUBMIT ADDITIONAL DISCOVERY**

In other denials to Defendants' SMF, Plaintiff does not cite to evidence, but instead requests an "investigatory deposition." Plaintiff objects to the Magistrate Judge's finding that no further discovery should be allowed, since Plaintiff had an opportunity to conduct discovery. On October 11, 2013, the Magistrate Judge issued a Scheduling Order (Doc. 27), setting a discovery

deadline of November 10, 2013. Plaintiff did not file a motion for extension of time to complete discovery.[3] Defendants argue that Plaintiff did not preserve this issue because he did not request an extension of time to complete discovery, nor did he serve any discovery requests. We agree. Therefore, no further discovery will be allowed.

### C. OBJECTION TO FAILURE TO EXHAUST FINDING

Plaintiff also objects to the Magistrate Judge's finding that he failed to exhaust his DOC administrative remedies with respect to his Eighth Amendment ETS claims, as required by the Prison Litigation Reform Act ("PLRA"). Plaintiff argues that the DOC and the Magistrate Judge erred in assessing the timeliness of the grievance since the ETS exposure was ongoing from October 14, 2010 through December 14, 2012, the date the grievance was filed. Defendants respond by arguing that Plaintiff did not exhaust his administrative remedies since he did not file his grievance within fifteen days of the event upon which the claim was based. Alternatively, Defendants argue that Plaintiff did not exhaust his administrative remedies as to Defendant Granlund, because Plaintiff did not identify Defendant Granlund as an individual involved in the event, as required by DC-ADM 804.

A prisoner must exhaust all "available" administrative remedies prior to initiating a Section 1983 action. 42 U.S.C. § 1997(e). Exhaustion must be done properly, meaning an inmate must follow procedural rules, including deadlines, so the merits of the grievance are considered. See Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v.

---

[3] We find that Plaintiff is aware of the procedure to request an extension of time as evidenced by his Motion for Extension of Time to File Oppositions to Defendants' Motion for Summary Judgment (Doc. 35).

Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Defendants raised the exhaustion defense in their waiver of reply to Plaintiff's amended complaint. Since Defendants have the burden of proof on the issue of exhaustion and they are the moving party on the motion for summary judgment, Defendants must show that they would be entitled to a directed verdict on the issue of exhaustion. Defendants presented Plaintiff's Grievance 440442, filed on December 14, 2012, the appeals from that grievance, and DC-ADM 804, which outlines the grievance procedures.

Here, the grievance procedures set forth in DC-ADM 804 require the prisoner to file a grievance with the Facility Grievance Coordinator within fifteen days of the event upon which the claim is based and identify individuals directly involved in the event. (Doc. 34, App. to Defs' MSJ, Ex. A, DC-ADM 804, at 1-2.) Second, the prisoner may appeal to the Facility Manager within fifteen days from receipt of the initial review response. (Id. at 2-1.) Third, the prisoner may appeal to Final Review within fifteen working days from the date of the Facility Manager's decision. (Id. at 2-3.) Therefore, to properly exhaust administrative remedies, Plaintiff must have "complete[d] the administrative review process in accordance with the applicable

11

procedural rules," as set forth above. Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88).

Plaintiff objects to the Magistrate Judge's finding that he failed to exhaust his administrative remedies, because although he alleges a continuing violation, the last date of his exposure to ETS was on December 12, 2012, thus making his grievance filed on December 14, 2012, timely. Defendants respond by asserting that the continuing violation does not apply and that Plaintiff offers no legal authority to support his position.

In determining the timeliness of grievances and whether the continuing violation doctrine is applicable, courts have distinguished deliberate indifference to an ongoing medical condition, where the doctrine is applicable, to discrete events, where the doctrine is not applicable. See Ellis v. Vadlamudi, 568 F. Supp. 2d 778 (E.D. Mich. 2008) (holding that the continuing violation doctrine applied to a claim of deliberate indifference to a chronic medical condition); see also McCormack v. Burnett, No. 12-CV-925-BBC, 2013 WL 5408260, *2 (W.D. Wisc. Sept. 25, 2013) (distinguishing ongoing inadequate medical care, which the continuing violation doctrine applies to, from a discrete medical issue, in which the doctrine does not apply). Exposure to ETS, unlike an ongoing medical condition, is a discrete event; therefore, the continuing violation doctrine is inapplicable to the present case.

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the United States Court of Appeals for the Fifth Circuit was confronted with a similar prison grievance procedure that required a grievance to be filed within fifteen days of an event. The plaintiff in Johnson filed two grievances complaining of prison officials' failure to protect him from assaults over the course of eighteen months. Id. at 518-519. The court treated the assaults as discrete events and found that

due to the fifteen day grievance procedure requirement, the plaintiff exhausted his claims arising from conduct that occurred within fifteen days from which the grievance was filed, but had not exhausted claims based on earlier conduct. Id. at 519.

Here, Plaintiff filed his grievance on December 14, 2012, complaining of exposure to ETS from October 14, 2010 through December 12, 2012. Plaintiff sent a Form DC-135A to Defendant Bickell on December 12, 2012, complaining of exposure to ETS. We agree with the Fifth Circuit's analysis in Johnson, and find that Plaintiff's claim of exposure to ETS was properly exhausted as to claims based on events fifteen days before the filing of his grievance on December 14, 2012.

Defendants also argue that Defendant Granlund is entitled to a judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies as to Granlund. The grievance procedures outlined in DC-ADM 804, require a prisoner to identify individuals directly involved in the event. (Doc. 34, App. to Defs' MSJ, Ex. A, DC-ADM 804, at 1-2.) Plaintiff failed to identify Defendant Granlund in Grievance 440442. Since Plaintiff must follow prison grievance procedures to properly exhaust administrative remedies, and Defendant Granlund was not identified at the grievance stage, Plaintiff failed to exhaust his administrative remedies as to his claim against Defendant Granlund.

Therefore, we will adopt the Magistrate Judge's recommendation that summary judgment be granted based on Plaintiff's failure to exhaust his administrative remedies, but only as to Defendant Granlund, and for the reasons stated herein. We will decline to adopt the Magistrate Judge's recommendation as to Defendant Bickell, since we find that Plaintiff properly exhausted his administrative remedies for exposure to ETS, fifteen days prior to the date of his grievance.

**D. PRESENT AND FUTURE INJURY ETS CLAIMS**

Although the Magistrate Judge did not reach the merits of Plaintiff's ETS claims, we find the issue ripe for disposition, since it has been fully briefed by the parties and the record is complete. Defendant Bickell argues that he is entitled to a judgment as a matter of law since Plaintiff cannot prove deliberate indifference to ETS exposure. Plaintiff responds by arguing that Defendants concede they are not able to enforce the policy prohibiting smoking, which shows he was exposed to unreasonably high levels of ETS, and that Defendants ignored his requests to be moved to E Block, which has windowed cells.

Deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction of pain, which violates the Eighth Amendment." Atkinson v. Taylor, 316 F.3d 257, 266-69 (3d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A prisoner must prove two elements for either a present or future injury ETS claim. With respect to a future injury ETS claim, the United States Supreme Court in Helling v. McKinney, 509 U.S. 25 (1993), set forth a two-part inquiry. The first part is an objective inquiry of whether the prisoner was exposed to unreasonably high levels of ETS. Helling, 509 U.S. at 35. In making this determination, a court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk." Id. at 36 (emphasis in original). The second part is a subjective inquiry of whether prison officials were deliberately indifferent to a serious risk of harm. Id. "The Supreme Court has held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Atkinson, 316 F.3d at 262 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

A present injury claim based on ETS exposure also requires a two part inquiry. The first part is an objective inquiry of whether there is a sufficiently serious medical need related to ETS exposure. Id. at 266. A medical need is serious if "it has been diagnosed by a physician as requiring treatment," or if the "'unnecessary and wanton infliction of pain,' . . . results as a consequence of denial or delay in the provision of adequate medical care." Atkinson, 316 F.3d at 266 (quoting Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). An illness arising from an inmate's exposure to ETS can be a serious medical need. Id. The second part is a subjective inquiry of whether prison officials were deliberately indifferent to the sufficiently serious medical need. Id.

Defendants argue that Plaintiff cannot show the objective component of a present or future injury claim because there is a policy prohibiting smoking inside of the facility that is enforced, ventilation in Plaintiff's housing unit is more than adequate, and only 22% of the inmates on A Block smoke. Additionally, Defendants argue that there is no medical record documenting Plaintiff suffered or is suffering from any ailment related to ETS. Plaintiff responds by arguing that he can meet the objective components of his present and future injury claim because Defendants conceded the point that 100% compliance of the smoking policy is impossible, and since smoking indoors has been prohibited, any amount of ETS is considered unreasonable. Plaintiff also argues that ventilation of his cell is not a substitute for compliance with the no-smoking policy.

In viewing the facts in the light most favorable to the Plaintiff, the non-moving party, we find that Plaintiff has not made a factual showing sufficient to establish the existence of the objective elements of Plaintiff's present and future injury claims. For a future injury claim, Plaintiff must show that he was exposed to unreasonably high levels of ETS, which can be met by showing that the risk he complains of "is not one that today's society chooses to tolerate." Helling, 509 U.S. at 36. Plaintiff asserts that he met this requirement because Defendants conceded that although the policy prohibiting smoking is enforced, they do not have 100% compliance by all inmates. Plaintiff argues that since there is a no-smoking policy, exposure to any amount of ETS is considered unreasonable. We disagree. Plaintiff must provide more than an imperfect compliance with the no-smoking policy, to show that he was exposed to an unreasonably high level of ETS. Plaintiff also fails to produce any evidence that shows any amount of exposure to ETS is a level of exposure society deems intolerable. Therefore, we find that Plaintiff has not established that he was exposed to unreasonably high levels of ETS, an essential element of his claim, on which he would bear the burden of proof of at trial.

For a present injury claim of exposure to ETS, Plaintiff must meet the objective inquiry of whether a sufficiently serious medical need related to ETS exposure exists. Plaintiff states in his unsworn declaration, that he has "experienced a range of distinct symptoms as a result of the ETS." Defendants provided Plaintiff's medical records, which indicate that Plaintiff has no known allergies, and that Plaintiff went to sick call for exposure to ETS on only one occasion, December 14, 2012, the day he filed his formal grievance. At sick call on December 14, 2012, Plaintiff complained of cigarette smoke causing "chest pains, stomach cramps, [shortness of breath], sore throat, burning sensation of the sinus, nose bleeding," and psychiatric problems.

Plaintiff was examined and did not receive any treatment for his symptoms. Plaintiff was told to return to medical as soon as possible if experiencing any symptoms triggered by smoke. Plaintiff did not submit any additional medical evidence indicating Plaintiff returned to medical because of exposure to ETS. Plaintiff's medical records contain no diagnosis or treatment related to exposure to ETS. In explanation of that fact, Plaintiff argues that there is no medical diagnosis for exposure to ETS, and that its dangers and risks are well-known to the medical community.

The present case is distinguishable from cases where courts have found that a jury could conclude a serious medical need existed, such as where a prisoner's respiratory condition worsened while in prison, the prisoner received treatment for those respiratory episodes, and the prisoner was told by a medical doctor to avoid smoke. See Cassady v. Walker, No. CV 109-128, * 7 (S.D. Ga. Mar. 31, 2014); see also Hall v. Warren, 443 F. App'x 99, 107 (6th Cir. 2011) (finding a reasonable jury could conclude prisoner had a serious medical need when prisoner presented medical evidence of treatment for shortness of breath secondary to second hand smoke, was prescribed albuterol, and was given a permanent Special Accommodation Notice from medical, requiring tobacco free housing). Plaintiff has not been diagnosed with any condition related to ETS exposure, nor has he received treatment for any of the complained of symptoms. In viewing the facts in the light most favorable to the Plaintiff, we find that Plaintiff's medical records, declaration and the multiple forms DC-135A, are insufficient to establish the existence of a serious medical need, which is an essential element of Plaintiff's case, and on which Plaintiff would have the burden of proof at trial.

## V. CONCLUSION

For the reasons set forth above, we will adopt the Magistrate Judge's recommendation to grant Defendants' Motion for Summary Judgment, but we decline to fully adopt the Magistrate Judge's reasoning. We will grant summary judgment as to Defendant Granlund because Plaintiff failed to exhaust his administrative remedies as to Defendant Granlund. We will grant summary judgment as to Defendant Bickell because we find that Defendant Bickell is entitled to judgment as a matter of law on the merits of Plaintiff's Eighth Amendment claim. We will also deny Plaintiff's Motion to Appoint Counsel. An appropriate order is attached.